CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
4/26/2023
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
      DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| BRANDY SANDS, *et al.*,<br><br>                              *Plaintiffs*,<br><br>v.<br><br>BLUE RIDGE ROCK FESTIVAL and JONATHAN SLYE,<br><br>                              *Defendants*. | CASE NO. 6:22-cv-00056<br><br>MEMORANDUM OPINION<br>& ORDER<br><br>JUDGE NORMAN K. MOON |

Plaintiffs in this case are bartenders and barbacks who worked at the Blue Ridge Rock Festival in 2021 and 2022. They allege that the owners and operators of the festival failed to pay minimum wage, overtime, and tips that the federal Fair Labor Standards Act and Virginia wage and hour laws require. Plaintiffs ask the Court to conditionally certify an FLSA collective action. Defendants argue that conditional certification is not warranted but, even if it were, they argue for changes in Plaintiffs' proposed notice to putative collective action members. For the following reasons, the Court will grant Plaintiffs' motion for conditional certification, with slight modifications to Plaintiffs' proposed notice.

Background

There are fifteen named plaintiffs in this case ("Plaintiffs") who were employed by Defendants as bartenders or barbacks at the Blue Ridge Rock Festival in September 2021 and/or 2022, respectively. Dkt. 1 ("Compl.") ¶ 2. Defendant Blue Ridge Rock Festival, LLC is a Virginia company located in Lynchburg, and Defendant Jonathan Slye is its primary owner and

1

managing member. Defendants owned and ran the operation of the Blue Ridge Rock Festival in 2021 and 2022. *Id.* ¶¶ 9–11.

Plaintiffs have brought this suit on their behalf and on behalf of those similarly situated, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; the Virginia Wage Payment Act ("VWPA"), Va. Code §§ 40.1-29, *et seq.*; and the Virginia Minimum Wage Act ("VMWA"), Va. Code §§ 40.1-28.8, *et seq. See* Compl. ¶ 1. Plaintiffs also have brought a state-law unjust enrichment claim against Defendants. *Id.* ¶¶ 83–90. Plaintiffs assert that Defendants hired at least fifty other putative FLSA class members, who served as bartenders, barbacks, or performed similar tipped service-related duties at the festivals. *Id.* ¶ 24; Dkt. 8-20 at 2 (¶ 2).

During each day of the festivals, Plaintiffs and the other bartenders and barbacks worked between ten to fourteen hours. Compl. ¶ 28. Plaintiffs assert that Defendants committed three separate FLSA violations in the course of Plaintiffs' employment at the festivals. First, Plaintiffs argue that Defendants never paid them the federal minimum wage of $7.25 per hour, for non-overtime hours worked. *Id.* ¶¶ 33–34; Dkt. 8-20 at 3 (¶ 4). Second, Plaintiffs assert that Defendants did not pay them overtime at one-and-one-half the federal minimum wage, for each hour worked exceeding forty during the week of each festival. Compl. ¶¶ 35–36; Dkt. 8-20 at 3 (¶ 5). Third, Plaintiffs contend that Defendants unlawfully took their assigned tips. According to Plaintiffs, tips "were supposed to be pooled and then divided exclusively among" Plaintiffs and the other bartenders and barbacks "working each bar tent according to the number of compensable work hours" at each festival. Compl. ¶ 44. Instead, Defendants "collected all tips," "kept a significant amount" of the tips, and also used them to pay "Defendants' managers, non-tipped employees, and other vendors." *Id.* ¶¶ 45–46; Dkt. 8-20 at 3–4 (¶¶ 10–11). Instead, Defendants paid them "for some, but not all hours worked" at the festivals "at a rate of $5.00 per

hour for non-overtime and overtime hours worked over forty (40) per week." Compl. ¶ 41. While "[f]or many hours," Defendants paid Plaintiffs "no wages at all." *Id.* ¶ 42.

In December 2022, Plaintiffs filed the motion for conditional certification of an FLSA collective action, and facilitation of notice to the potential collective-action members. Dkt. 8. Plaintiffs seek conditional certification of the following Collective Action Class:

> Plaintiffs and all individuals employed by Defendants as bartenders and/or barbacks and/or performing similar tipped service-related duties in or about September 2021, at the 2021 Blue Ridge Rock Festival in or around Danville, Virginia and/or in or about September 2022, at the 2022 Blue Ridge Rock Festival in or around Alton, Virginia.

Dkt. 8 at 1.

Plaintiffs also requested that the Court order Defendants to produce to Plaintiffs' counsel, within 14 days, the full legal name, mailing address, email address, and cell phone numbers for all members of the Collective Action Class, in a usable electronic format. *Id.* at 1–2. Further, in their motion Plaintiffs sought an order that Plaintiffs' counsel (or a third-party administrator) serve copies of the Court-approved FLSA Class Member Notice and Opt-In Consent Form on each class member by U.S. mail, email, and text message. *Id.* at 2. Thereafter, class members would have 60 days to file their Opt-In Consent Forms. *Id.* And Plaintiffs request that a reminder notice be sent to class members who have not yet opted-in, no earlier than 30 days after the first service of the Class Member Notice forms. *Id.*

Defendants filed an opposition to the motion. Dkt. 25. Defendants first argue that Plaintiffs have not demonstrated that proposed collective action members are "similarly situated" for purposes of an FLSA collective action. *Id.* at 3–6. Defendants emphasize that "an FLSA plaintiff is required to provide evidentiary support that all potential plaintiffs were victims of a common, unlawful policy or plan." *Id.* at 5. But Defendants argue that Plaintiffs have provided

3

"nothing more than Plaintiffs' bare assertions that all members of the putative collective action are similarly situated." *Id.* at 6. In their view, Plaintiffs have "provide[d] no common proof such as declarations from other putative collective action members" that bartenders and barbacks "have the same primary job duties," "were subject to the same allegedly unfair pay practices," or the "same unauthorized deductions of assigned tips." *Id.*

Next, Defendants argue that Plaintiffs' proposed collective action is "unmanageable and inappropriate for collective action treatment or adjudication," writing that it would be entirely "inefficient" to manage the claims collectively. *Id.* at 6–7. According to Defendants, Plaintiffs have done nothing more than "attempt to bind together different, highly individualized potential claims of hundreds of others." *Id.* at 6. They envisage this case will require individualized inquiries into "each putative claimant's experiences at the festival(s) with the sign-in and sign-out process, tip pool procedure," etc., "at a painstaking level of detail." *Id.* at 7. Lastly, Defendants raise a number of asserted "false" with Plaintiffs' proposed notice form and notice plan. *Id.* at 8–9.

On March 15, 2023, the Court heard argument on the motion at the conclusion of briefing. There, the Court encouraged the parties to meet and confer regarding Defendants' objections to the proposed notice form. Subsequently, on April 19, 2023, the parties filed a joint letter narrowing the scope of disputes about the proposed FLSA notice. Dkt 30. The motion is ripe for disposition.

## Law

An action alleging FLSA violations may be brought "against any employer … by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). However, "[n]o employee shall be a party plaintiff to any such

action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.*

Such "collective actions" allow participating plaintiffs to lower the costs needed to vindicate their rights by pooling resources, and, for their part, the courts benefit by being able to efficiently resolve in one proceeding "common issues of law and fact arising form the same alleged [unlawful conduct]." *See Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989). The FLSA thus requires plaintiffs to a collective action to be "similarly situated," and they must affirmatively "opt-in" by filing with the court written consent to join the action. *See Houston v. URS Corp.*, 591 F. Supp. 2d 827, 831 (E.D. Va. 2008); 29 U.S.C. § 216(b).

The issue whether to grant conditional certification and facilitate notice is a discretionary decision of the court. *See Hoffman-La Roche*, 493 U.S. at 169–70; *Edwards v. Optima Health Plan*, No. 2:20-cv-192, 2021 WL 1174724, at *3 (E.D. Va. Mar. 29, 2021). Courts in the Fourth Circuit have generally followed a two-stage approach to certification of an FLSA collective action. *See, e.g., Farias v. Strickland Waterproofing Co., Inc.*, 3:20-cv-76, 2022 WL 1017901, at *3–4 (W.D. Va. Apr. 5, 2022); *Stacy v. Jenmar Corp. of Va., Inc.*, No. 1:21-cv-15, 2021 WL 4787278, at *2 (W.D. Va. Oct. 14, 2021); *Mendoza v. Baird Drywall & Acoustic, Inc.*, No. 7:19-cv-882, 2021 WL 2435873, at *3 (W.D. Va. June 15, 2021). At the first stage, the court must determine whether "there is sufficient evidence to reasonably determine that the proposed class members are similarly situated enough to conditionally certify the collective action and provide potential class members with initial notice of the action and the opportunity to 'opt-in.'" *Houston*, 591 F. Supp. 2d at 831. The FLSA does not define the term "similarly situated" and the Fourth Circuit has not yet interpreted its meaning. *Stacy*, 2021 WL 4787278, at *2. However, district courts in the Fourth Circuit have generally held that plaintiffs are similarly situated under

5

§ 216(b) if they "raise a similar issue as to coverage, exemption, or nonpayment of minimum wages or overtime arising from at least a manageably similar factual setting with respect to the job requirements and pay provisions." *Id.* (quoting *Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d 700, 705 (E.D. Va. 2011)). The standard is "fairly lenient" and requires "only minimal evidence, such as factual evidence by affidavits or other means." *Mendoza*, 2021 WL 2435873, at *3 (citations omitted).

The court proceeds to stage two if the defendant files a motion for decertification, which usually occurs when discovery is virtually complete. *Houston*, 591 F. Supp. 2d at 832; *Dearman v. Coll. Hous. Servs., Inc.*, No. 5:17-cv-57, 2018 WL 1566333, at *2 (W.D.N.C. Mar. 30, 2018). At that stage, the court applies a "heightened fact specific standard to the 'similarly situated' analysis." *Mendoza*, 2021 WL 2435873, at *3 (quoting *Long v. CPI Sec. Sys., Inc.*, 292 F.R.D. 296, 299 (W.D.N.C. 2013)). If the plaintiffs establish that they are "similarly situated," the collective action proceeds to trial; if the court determines that the plaintiffs are not "similarly situated," the class is decertified, and the original plaintiffs may proceed on their individual claims. *Mendoza*, 2021 WL 2435873, at *3 (citations omitted).

<u>Reasoning</u>

It is a "fairly lenient" standard for conditional certification of a collective action that requires "only minimal evidence." *Long*, 292 F.R.D. at 298. Plaintiffs have more than met that standard and shown that those included in the Collective Action Class—including Plaintiffs and all individuals employed by Defendants as bartenders, barbacks, or performing similar tipped service-related duties at the 2021 and/or 2022 Blue Ridge Rock Festivals—"raise a similar legal issue as to coverage, exemption, or nonpayment of minimum wages or overtime arising from at

least a manageably similar factual setting with respect to their job requirements and pay provisions." *See Stacy*, 2021 WL 4787278, at *2.

Defendants argue that Plaintiffs' submission offers nothing more than "bare assertions" that they are similarly situated, and that they offer "no common proof such as declarations …." Dkt. 25 at 6. They also cite cases to argue that boilerplate declarations are insufficient to support conditional certification. But here, there is no lack of evidence. Plaintiffs' showing is based on, among other things, sworn declarations from each of the fifteen named Plaintiffs, as well as several additional "opt-in" plaintiffs. *See* Dkts. 8-3 – 8-19. Nor are these mere bare-bones declarations. For example, Plaintiff Jeff Peters attests that he was employed by Defendants to work at the Blue Ridge Rock Festival in 2021 as a bartender and to assist with serving drinks to Defendants' customers. Dkt. 8-3 ¶¶ 5–6 (Peters Decl.). Peters states that Defendants employed more than fifty people as bartenders, barbacks, and to perform other tipped service-related duties at the two festivals. *Id.* ¶ 7. He describes the manner in which customers paid tips by credit card or cash. *Id.* ¶ 8. He also attests that he has "personal knowledge that all 2021 Festival FLSA Class Members and [he] were subject to the same payroll policies perpetrated by Defendants resulting in Defendants' common failure to pay the other 2021 Festival Class Members and [him]" minimum wage, earned tips, and overtime, in violation of the FLSA. *Id.* ¶ 25. He describes the other facts cited above about Defendants' failure to pay him the federal minimum wage, *id.* ¶ 17, or time-and-one-half for overtime, *id.* ¶ 18, or that Defendants unlawfully kept between $250 and $2,500 in tips, *id.* ¶ 19. Other declarations are to a similar effect, including for the 2022 Festival. *See, e.g.*, Dkt. 8-4 ¶¶ 5–6 (Sands Decl.) (employed as a bartender at the 2022 Festival).

To be sure, Plaintiffs' declarations could be supported by more detail. But they are more than sufficient to satisfy the minimal evidentiary burden to show Plaintiffs and the other putative collective action members "raise a similar legal issue as to coverage, exemption, or nonpayment of minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions." *See Stacy*, 2021 WL 4787278, at *2. The claims regarding Defendants' alleged unlawful failure to pay required minimum wage, overtime, and unlawful taking of tips are all highly similar. Further, the alleged facts underlying those claims overlap to a great degree. The Blue Ridge Rock Festival was put on by the same Defendants, two years in a row, in Danville and Alton, Virginia. Plaintiffs bartended at the festivals. Nothing in the record discloses any aspect of Plaintiffs' claims or the underlying facts requiring any "highly individualized" inquiry, as Defendants argue. *See* Dkt. 25 at 6. Numerous other courts have similarly held that bartenders can be similarly situated for purposes of joining together in an FLSA collective action. *See, e.g.*, *Sellers v. Keller Unlimited, LLC*, 386 F. Supp. 3d 631, 634 (D.S.C. 2019) (denying motion to *decertify* bartenders' collective action, holding that "the Court finds that Plaintiffs have demonstrated that their factual and employment settings are sufficiently uniform to warrant certification"); *Spencer v. Macado's, Inc.*, No. 6:18-cv-5, 2019 WL 4739691, at *3 (W.D. Va. Sept. 27, 2019) (holding that "Plaintiffs have met their relatively relaxed burden under the 'similarly situated' analysis," and granting motion for conditional certification of FLSA class comprised of servers and bartenders at Macado's restaurants). The same holds true here.

Defendants also argue that the proposed collective action is "unmanageable and inappropriate for collective treatment or adjudication." Dkt. 25 at 6–7. Defendants note that the purpose of the FLSA collective action procedure is to secure "efficient resolution" or "common

8

issues of law and fact." *Id.* at 7. And Defendants believe this proposed collective action will "require this Court to inquire into each putative claimant's experiences at the festival(s) with the sign-in and sign-out process, tip pool procedure, and with his or her managers at a painstaking level of detail." *Id.*

In *Spencer v. Macado's*, this Court addressed and rejected similar arguments. There, Macado's had argued that the plaintiffs had only presented declarations concerning four of Macado's locations (out of at least fifteen), and that the duties and polices of the servers and bartenders varied significantly between locations. Macado's also argued that the plaintiff's claims were all "individualized" in nature. *Id.* at \*3. The Court concluded that "[d]iscovery may well support Macado's contention that Plaintiff's claims are essentially individualized in nature[,] but reviewing such evidence at this stage in the litigation would amount to this Court resolving factual disputes between the parties about whether Macado's maintained a companywide policy as Plaintiffs' allege." *Id.* at \*3 (cleaned up). This Court therefore "decline[d] Macado's invitation to do so." *Id.* Simply put, "[i]t is not the Court's role to resolve factual disputes, decide substantive issues going to the ultimate merits or make credibility determinations at the preliminary certification stage of an FLSA collective action." *Barrus v. Dick's Sporting Goods, Inc.*, 456 F. Supp. 2d 224, 230 (W.D.N.Y. 2006). For those same reasons, at this stage the Court cannot credit Defendants' declaration from the beverage director at the festivals that all bartenders were paid "more than the minimum wage in Virginia" and "more than the "overtime minimum wage in Virginia," at the expense of Plaintiffs' contrary evidence. *Cf. Macado's*, 2019 WL 4739691, at \*4 (noting that "happy camper" declarations "are generally entitled to little or no weight at this stage").

9

At bottom, Plaintiffs' evidentiary showing suffices at this stage of the case to establish that Plaintiffs and the other proposed collective action members are "similarly situated" for purposes of the FLSA, and further, that no individualized inquiry would render inefficient their proceeding as a collective action. Plaintiffs have established their entitlement to conditional certification of their FLSA collective action.

Challenges to Proposed Notice

While Defendants initially had more challenges to Plaintiffs' proposed notice, Dkt. 25 at 8–9, the parties have narrowed the issues in dispute after they met and conferred. The remaining disputes over the contents of the proposed notice are included in competing notices filed on April 19, 2023. Dkt. 30. "The district court has broad discretion regarding the 'details' of the notice sent to potential opt-in plaintiffs." *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 574 (D. Md. 2012) (citation omitted).

First, the notice shall refer to the "Blue Ridge Rock Festival" rather than Plaintiffs' preferred "Virginia Rock Festival." Dkt. 30-1 at 1. Plaintiffs' own complaint and the underlying declarations describe the events as the "Blue Ridge Rock Festival." *See* Compl. ¶ 2; *see, e.g.*, Dkt. 8-20 at 2; Dkt. 8-4 ¶ 2 (Sands Decl.).

Second, Defendants seek to include a paragraph describing their position on the litigation. In their proposed notice, Defendants would add language that they "deny Plaintiffs' allegations in their entirety," "paid their Tipped workers and all other workers properly," "deny that they owe anything to the Plaintiffs or any other current or former workers," and that "if this case proceeds, they will produce facts that demonstrate that they paid the Plaintiffs properly and in accordance will applicable law." Dkt. 30-1 at 2. Defendants would also write that "You can obtain a copy of the Defendant's [sic] Answer to the Complaint" by calling Defense counsel. *Id.*

Including some description of Defendants' position is warranted and supportive of a balanced and neutral notice. *See Butler*, 876 F. Supp. 2d at 575 (ordering that notice be amended "because it fails to assert Defendants' position in the lawsuit"). Where requested, courts have "found it reasonable to include defendants' denials in the introductory section of collective action notices." *Zimnicki v. Krysiak Constr. Corp.*, No. 21-cv-4634, 2022 WL 17820139, at *11 (E.D.N.Y. Sept. 27, 2022). Here, the notice shall include the first two sentences of Defendants' statement of their position. Dkt. 30-1 at 2. The third—concerning anticipated production of facts that would substantiate their position—is premature, excessive, and unnecessary. *See id.* (including defendants' position that they did not violate the FLSA or other law and paid their employees appropriately for hours worked). Defendants' fourth sentence offering to provide a copy of Defendants' answer will be allowed, as modified, as a stand-alone sentence: "You can obtain a copy of Plaintiffs' Complaint or Defendants' Answer by calling [Plaintiffs' counsel]," including Plaintiffs' counsel's phone number. *See Arevalo v. D.J.'s Underground, Inc.*, No. 09-cv-3199, 2010 WL 2639888, at *4 (D. Md. June 29, 2010) (reviewing precedent concerning inclusion of defense counsel in FLSA notice; concluding that "[f]urther information may be obtained from Plaintiffs' counsel").[1]

Third, Defendants seek to include the following sentences: "Currently, there is not money available, nor is there a guarantee that money will become available. However, your legal rights are affected, and you have a choice to make now." Dkt. 30-1 at 3. Defendants offer no precedent

---

[1] Defendants have not sought to include Defense counsel's name and other contact information, except as to provide a copy of the Answer upon request. *See* Dkt. 30-1. The Court therefore will not address whether including contact information for Defense counsel might be appropriate, and any accompanying disclaimers. *See Arevalo*, 2010 WL 2639888, at *4. Rather the Court will direct *Plaintiffs'* counsel to offer to provide either the Complaint or the Answer upon request.

or argument in support of that language. It shall not be included. Any valuable purpose served by including such language would be outweighed by the risk of dissuading potential plaintiffs from responding due to Defendants' as-yet-untested assertion that there are no funds to support any recovery. In any event, the remainder would be redundant of Section III of the Notice, which, as modified, fully describes the effects of joining this lawsuit (or not).

Fourth, Defendants seek to add a clause to Section III specifically describing that the information that may be requested from potential plaintiffs "includ[e] sitting for a deposition and testifying in court." Dkt. 30-1 at 3. Such language is "regularly accepted" to notify potential plaintiffs of their potential obligations associated with joining the suit. *See Byard v. Verizon W. Va.*, 287 F.R.D. 365, 374 (N.D. W. Va. 2012) (stating that "[t]he Court agrees that the notice should be amended to inform prospective members of the prospect of providing deposition and court testimony and participating in discovery"). The proposed addition is in line with this precedent and shall be included in the notice.

Finally, to the extent Defendants contend that they should not have to provide Plaintiffs the phone numbers of the members of the putative Collective Action Class, the objection is unpersuasive. *See* Dkt. 25 at 9. Courts within the Fourth Circuit "have repeatedly ordered the disclosure of potential plaintiffs' phone numbers in FLSA collective action cases," many even "without a showing of a special need for this information," and "especially in recent years, as text messaging has become a ubiquitous form of communication." *Thomas v. Maximus, Inc.*, No. 3:21-cv-498, 2022 WL 1482010, at *7 (E.D. Va. May 10, 2022); *see also Farias*, 2022 WL 1017901, at *6 (ordering that defendants provide plaintiffs in FLSA case "full name, last known address, telephone number(s), and email addresses of each and every individual that is a member of the collective action"). To the extent Plaintiffs must show a "special need" for phone numbers,

they have met any such burden here, given the evidence of the transitory nature of bartenders and barbacks who work at rock concerts and festivals. *See Ricketts v. NV5, LLC*, No. 2:21-cv-56, 2022 WL 949947, at *5 (S.D. W. Va. Mar. 29, 2022) (finding production of phone numbers "appropriate" and that the demonstration of a "special need" was met given the "transitory nature" of the class); *see also, e.g.*, Dkt. 8-4 ¶ 27 (Sands Decl.) (explaining that many bartenders and barbacks employed at the festivals "live outside the Commonwealth of Virginia, move regularly for work, travel, or personal reasons," and lack a "fixed address for an extended period").[2]

## Conclusion

For these reasons, it is **ORDERED** that

1. Plaintiffs' motion for conditional certification of a collective action is **GRANTED**. Dkt. 8.

2. A collective action is **CERTIFIED** as to the following individuals:

   All individuals employed by Defendants as bartenders and/or barbacks and/or performing similar tipped service-related duties in or about September 2021, at the 2021 Blue Ridge Rock Festival in or around Danville, Virginia and/or in or about September 2022, at the 2022 Blue Ridge Rock Festival in or around Alton, Virginia.

3. Within **fourteen (14) days** of this Order, Defendants shall produce to Plaintiffs' counsel, in a usable electronic format, the full legal name, last known mailing address, telephone number(s), and email address(es) of each and every individual that is a member of the collective action.

---

[2] Needless to say, there is no basis to assert that Plaintiffs' counsel would use the phone numbers except in an appropriate manner to facilitate transmission of the Court-approved notice.

4. Plaintiffs' Proposed Notice and Consent to Participate in a Collective Action Forms and proposed methods for transmitting such notice to collective action members are **APPROVED**, subject to the specific modifications set forth above.

It is so **ORDERED**.

The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion & Order to all counsel of record.

Entered this __26th__ day of April, 2023.

*[signature]*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

14